3

**UNITED STATES DISTRICT COURT**
<u>**WESTERN DISTRICT OF NEW YORK**</u>               **6:21-cr-06030**

**UNITED STATES OF AMERICA**

         **v.**                                                      **DEFENDANT'S SENTENCING**
                                                                 **STATEMENT AND REQUEST**
**REBECCA WOODIN**                                  **FOR A NON-GUIDELINE SENTENCE**

      MICHAEL P. SCIBETTA, ESQ., affirms as follows:

      I am licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent the defendant, Rebecca Woodin.

      The factual representations made in this Statement are based on investigations by members of my office, including a review of the discovery materials, conversations with Rebecca Woodin, an examination of education and medical records, a review of the Revised Presentence Investigation Report (hereinafter PSR), dated September 28, 2021, and the following exhibits:

| | |
|---|---|
| Exhibit A: | Independent Forensic Psychiatric Opinion by Gretchen N. Foley, M.D. (Board Certified in Forensic and General Psychiatry dated June 1, 2021; |
| Exhibit B: | Certificates of Completion (three); |
| Exhibit C: | Certificate of Achievement (Moral Reconation Therapy); |
| Exhibit D: | Certificate of Achievement (Getting Started Journal); |
| Exhibit E: | Volunteers of America letter dated March 30, 2021; and |

3

Exhibit F:   Volunteers of America letter dated August 21, 2020

Exhibit G:   Rebecca Woodin's journal notes

## BACKGROUND

On June 28, 2021, Rebecca Woodin pled guilty to Receipt and Distribution of Child Pornography in violation of Title 18 United States Code §2252(a)(2)(A) and §2252A(b)(1). Sentencing is currently scheduled for October 29, 2021.

The written plea agreement entered into by the parties anticipated an advisory Sentencing Guidelines maximum range of 240 months.  Nevertheless, both parties have specifically reserved the right to argue for a sentence outside of the advisory range.

## GENERAL SENTENCING AUTHORITY

Under 18 U.S.C. §3553(a), federal sentencing courts must impose a sentence that is *sufficient, but not greater than necessary*, to meet the purposes of sentencing. This includes the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid sentencing disparities between defendants with comparable criminal records who have been convicted of similar crimes, and the Guidelines themselves. *See United States v. Dorvee*, 616 F.3d 174, 182-83 (2d Cir. 2010) (quoting 18 U.S.C. §3553(a)(1)-(6)).

The sufficient, but not greater than necessary language of § 3553 is commonly referred to as the parsimony clause. *United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007). When imposing sentence, the district court must consider the factors mentioned in §3553(a), including the requirements of the parsimony clause. *Id.* Simply stated, if the district court concludes that either of two sentences would properly serve the statutory purposes of §3553(a), application of the parsimony clause compels imposition of the lesser sentence.  *See*

3

*United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

The sentencing court must also consider the advisory Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 245-246 (2005). However, even where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *United States v. Dorvee*, 616 F.3d at 182 (citing *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008)).

The importance of individualized sentencing is a central theme in federal criminal law. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 113 (1996).

In *Booker*, the United States Supreme Court emphasized the importance of reserving sentencing discretion to federal district court judges. The Court held that:

> The federal sentencing statute . . . requires a sentencing court to consider Guidelines ranges...... , but it permits the court to tailor the sentence in light of other statutory concerns as well.

543 U.S. at 245-246.

The Court thereafter reaffirmed its position in *Kimbrough v. United States*, 552 U.S. 85 (2007) stating that:

> The sentencing judge . . . has greater familiarity with ... the individual case and the individual defendant before him than the Commission or the appeals court .He is therefore in a superior position to find facts and judge their import under [3553(a)] in each particular case.

*Id.* at 108 (internal quotations omitted).

### THE NATURE OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Ms. Woodin comes before the Court fully aware that there are no excuses for her behavior.

She has fully cooperated with authorities and has accepted complete and full responsibility for her actions.

At the time of her crimes, Ms. Woodin was battling depression, low self-esteem, and a crumbling and abusive marriage.

In an effort to provide further context concerning Ms. Woodin's background and mental health issues, the defense submits Exhibit A, an Independent Forensic Psychiatric Opinion prepared by Dr. Gretchen N. Foley, M.D. (IFPO. As the IFPO makes clear, Ms. Woodin's criminal activity was impacted in large part by her depression and self-esteem issues. Additionally, and perhaps more importantly, the IFPO concludes with the doctor's opinion that ***"the risk of Ms. Woodin engaging in this behavior again is extremely low."***

**Ms. Woodin Will Not Get the Mental Health Treatment She Needs in the Bureau of Prisons**

Ms. Woodin has suffered from depression and anxiety for many years. She needs mental health treatment. Unfortunately, she will not receive that treatment while incarcerated in the BOP.

Mental health treatment in the Bureau of Prisons is designed to keep inmates and those around them safe. While the Department of Justice estimates that one in four inmates in this country suffers from a diagnosable mental health disorder, "rarely will an inmate receive any meaningful treatment for underlying disorders such as PTSD, Major Depressive Disorder, Bi- Polar Disorder, and the like …." *See* Ellis, Alan and Allenbaugh, Mark, "Mental Health Care in the Bureau of Prisons," The National Trial Lawyers, April 13, 2017. http://alanellis.com/wp-content/uploads/2017/04/mental-health-care-in-bureau-of-prisons.pdf.

In 2014, the Bureau of Prisons adopted a new mental health policy intended to increase the standards of care for inmates with mental illness. *See* https://www.bop.gov/policy/progstat/5310_16.pdf. However, as of 2015, only 3% of sentenced federal inmates were being treated for mental illness. A 2016 Performance Budget Congressional Submission indicated that, at the very least, 19% of BOP inmates had a history of mental illness. Furthermore, as of October 2015, the Bureau of Prisons had filled just 57% of full-time psychiatrist positions. *See* https://oig.justice.gov/reports/2017/e1705.pdf, last accessed, April 29, 2021. The overwhelming odds are that Ms. Woodin will not be one of the lucky 3% of inmates who receives meaningful mental health treatment while incarcerated.

**Reduced Opportunities Due to COVID-19**

Ms. Woodin was arrested over one year and eight months ago on January 27, 2020. At the time of sentencing, she will have one year and nine months credit toward a federal sentence. More importantly, because of the ongoing COVID-19 pandemic, Ms. Woodin has served her time in federal custody, with limited ability to participate in educational, recreational, or vocational programing. This lack of programming has magnified the toll on Ms. Woodin's emotional and mental health. The defense asks the Court to consider this extraordinary burden when crafting the appropriate sentence for Ms. Woodin. In spite of these challenges, Ms. Woodin has taken advantage of what limited opportunities have been available and completed several Certificates which have been attached hereto as exhibits.

**CONCLUSION**

Ms. Woodin is incredibly sorry for her actions. She understands that she must be punished. The length of her incarceration, however, must be tempered by the need for rehabilitation. The path to rehabilitation for Ms. Woodin is through mental health treatment. Unfortunately, a Guidelines prison sentence will not achieve this goal. Attached as Exhibit G are Ms. Woodin's journal notes which conclude with her heartfelt statement of remorse. I believe it is important for the Court to consider these notes when determining an appropriate sentence for Ms. Woodin.

Based on all of the above, Ms. Woodin respectfully requests that this Court consider her history and characteristics, her tumultuous mental health struggle, her need for continued treatment, along with her acceptance of responsibility and sincere expression of remorse ***as well as her low risk for recidivism***, in determining the appropriate sentence in this case. She respectfully submits that a sentence below the

7

Guidelines range, along with a term of supervision and SORA conditions would be sufficient, but not greater than necessary, to satisfy the goals set forth in 18 U.S.C. §3553.

| | |
|---|---|
| Date: October 7, 2021 | /s/ Michael P. Scibetta, Esq. |
| | 30 W. Broad Street, Suite 501 |
| | Rochester, New York 14614 |
| | (585)232-2770 |
| | mike@scibettalawoffice.com |
| | Attorney for Rebecca Woodin |

7